Davis v. Brooks, 7 N.C. 133, approved by HENDERSON, C. J.
A division of the latter had been made, under an order of the county court, upon the principles mentioned in a case agreed, which was submitted to STRANGE, J., on the last Spring Circuit, and which was as follows:
"The intestate Zadock Stallings, in his lifetime, put into possession of several of his children the negroes mentioned in the schedules filed by them, and which have been taken into the account of the division of the negroes of which the intestate died possessed. That the said Zadock executed no deed or other written evidence of the transaction, upon his sending the said slaves to the houses of his said children; and that no express gift of the said slaves was made by the said Zadock to the said children, but that the said slaves were put into the possession of the said children in the ordinary manner in which slaves are sent to the younger members of a family upon their settlement in life. That the said (299) Zadock never resumed the possession of any of the said slaves, but that they remained in the possession of the said children until the death of the said Zadock. That during the possession of the said slaves by the said children, and before the death of the said Zadock, the said slaves increased in number and value, which increase had not been estimated in dividing the slaves of which the said Zadock died possessed, as an advancement made to the said children by the said Zadock in his lifetime."
Upon this case, his Honor pronounced judgment confirming the division made under the order of the county court, from which the children who were not advanced appealed to this Court.
By the act of 1766 (Rev., ch. 79), which points out the method of distributing intestate's estates, it is amongst other things enacted: "That in case any child shall have any estate by settlement from the intestate, or shall be advanced by said intestate in his lifetime, by portions not equal to the shares which shall be due to the other children by such distributions as aforesaid, then so much of the surplus of the estate of such intestate is to be distributed to such child or children as shall be advanced in the lifetime of the intestate as shall make the estate of the said children to be equal, as near as can be estimated."
By the act of 1792 (Rev., ch. 364) it is declared: "That when any person shall die intestate, who had in his lifetime given to or put in possession of any of his children any personal property, such child shall cause to be given to the administrator of such estate an inventory, on oath, setting forth therein the particulars by him received of the intestate in his lifetime." *Page 161 
It appears to me that the construction to be put upon the act of 1766 is that advancements made by an intestate ought to be valued at the time they were made, and not at the death of the intestate. But when the two acts are taken together, I think there can be no doubt but that this is the proper construction. The latter act expressly declares that the child advanced shall give to the administrator, (302) on oath, an inventory setting forth the particulars by him or her received of the intestate in his lifetime. It follows, of course, as I think, that such particulars are to be considered the advancements made, and their value at the time is to be regarded as the amount of the advancements. The act of 1806 (Rev., ch. 701) was made for the purpose of preventing frauds and perjuries in contests respecting slaves claimed from parents under parol gifts. And although it invalidated all parol gifts made to children, so that they could not thereby acquire title to slaves, yet if the parent suffered the child to remain in possession of slaves thus given, during his lifetime, and died intestate, the act declared that such slaves should be considered an advancement, and should be regulated by the laws then in force relating to advancements made to children by a parent in his lifetime. The law intended to give the parent a power over property thus situated; but if he did not think proper to exercise it, the property should then be considered as an advancement made, as if that act had never passed.
When a child has been thus possessed of slaves, and retains uninterrupted possession until the parent's death, what view of the property, as an advancement, does the act refer us to? Not to its situation at the parent's death, but to the possession of the property when first taken, and continue as an inchoate advancement, completed by the intestate's death. It could not be comprehended before, because the act gave the parent the power of reclaiming it.
Considering it as an advancement, can there be any doubt that the child must deliver an inventory to the administrator, as the act of 1792 prescribes, setting forth therein the particulars by him or her received of the intestate, in his or her lifetime — not the slaves that he holds at the intestate's death?
I admit that cases of hardship may be supposed, whatever (303) general rule may be adopted; as where one child receives a young female slave; another a valuable male slave, who may be a tradesman. But this only proves that general rules will not suit all individual cases.
There is certainly no hardship or injustice in the consideration that an advancement in the hands of an older child shall increase from the time he receives it until the parent's death, and that it should be valued at the time he received it; because at the parent's death such child may *Page 162 
also have a family, and be somewhat advanced in years, and a younger child, to whom the same advancement may be made at the father's death, that was made to the older in his lifetime, may, when he arrives at the same age, have as great an increase in his advancement as the older child has at that time. This is equality, and of course justice.
I therefore think that the advancements should be valued at the time they are received, and not at the time of the intestate's death.